THE PEOPLE, etc., ex rel. BENJAMIN K. PHELPS, Dis-
TRICT ATTORNEY OF NEW YORK COUNTY, APPELLANTS, v. ENOCH
L. FANCHER, RESPONDENT.

*Contempt — Refusal of witness to answer question — power of court to commit for —
Habeas corpus — what may be inquired into upon its return — where should be made
returnable.*

Where a witness, duly summoned to testify before the grand jury, appears and
refuses to answer a proper question propounded to him in the course of his
examination, the court has power to commit him to the county jail until
he shall answer such question, and such commitment is regular and lawful,
both at common law and under the statutes of this State.

Where a person so refusing to answer has been committed, and a *habeas corpus*
has been granted, the officer allowing the writ has no power to inquire into the
truth of the facts stated in the commitment, nor whether the question was a
proper one, or whether the prisoner was privileged from answering it. The
justice or propriety of the commitment cannot be reviewed in this way. (Per
Westbrook, J.)

Where a witness has been committed by the Court of Oyer and Terminer of
Kings county, for refusing to answer a question put to him by the grand jury,
and the court still remains in session, a justice of the Supreme Court in the
city of New York, has no power to allow on his behalf a writ of *habeas corpus*

made returnable before himself, and no power to discharge the arrest. (Per DAVIS, P. J., and WESTBROOK, J.)

CERTIORARI to review proceedings on *habeas corpus*, by which one W. F. G. Shanks was discharged from the custody of the sheriff of Kings county. The opinion of Mr. Justice FANCHER is reported in 15 Abbott (N. S.), page 38. The facts are stated in the opinion.

*Winchester Britton*, for the relator.

*Henry L. Clinton & C. A. Runkle*, for Shanks.

WESTBROOK, J.:

At a court of Oyer and Terminer, regularly convened, held in and for the county of Kings, in October, 1873, W. F. G. Shanks was subpenaed and examined as a witness before the grand jury of such court. The complaint, in furtherance of which he was summoned as a witness, was for an alleged libel upon Alexander McCue, published in the New York Tribune of August 30, 1873, and contained in an article printed in that paper, entitled the " Brooklyn Ring's Method." For the purpose of ascertaining the name of the writer of the alleged libellous article, with a view to his indictment, Mr. Shanks was asked the following questions, and gave the following answers: " Q. Do you know who wrote the article, entitled the ' Brooklyn Ring's Method,' in the issue of August 30th, 1873 ? A. I do know. Q. Who was it ? A. *I decline to answer the question, because I am instructed, as one of the editors of the paper, not to give the name of writers of articles published in it. It is one of the office regulations, and on the principle that the paper, and not the editor, is responsible."* The grand jury reported the refusal of Mr. Shanks to answer, to the said Court of Oyer and Terminer, which, after adjudging the question to be proper, committed him to the common jail of the county, upon his persisting in his refusal to answer, " *until he may answer the questions propounded to him which he has refused to answer."* The commitment bears date the 22d day of October, 1873, and was subscribed by the judges holding the court. The sheriff of the county of Kings, having received Shanks into his custody under

the commitment, was required, by a writ of *habeas corpus ad testificandum*, issued by the Court of Oyer and Terminer, held in and for the city and county of New York, Judge NOAH DAVIS presiding, to produce him before said court, on the 23d day of October, 1873, at ten o'clock A. M., to be examined as a witness upon a trial of an indictment, then pending in said court against Edward S. Stokes. In obedience to the requirements of such writ, Mr. Shanks was brought before the court issuing the same and examined as a witness, and, after his evidence had been given upon the trial, he was remanded by the New York Oyer and Terminer " to the custody of the keeper of the jail within named, under the commitment of the Court of Oyer and Terminer of the said county of Kings." After Mr. Shanks had been thus remanded into the care and custody of the sheriff of the county of Kings, and before his return to the jail of that county, a writ of *habeas corpus*, to inquire into the cause of his detention, was issued by the Hon. ENOCH L. FANCHER, then one of the justices of the Supreme Court, requiring such sheriff to produce him before the said judge, at the chambers of the Supreme Court, in the court-house in the city of New York, on the 23d day of October, 1873, at two o'clock in the afternoon.

Upon the return day and hour of the writ, Mr. Shanks was brought before Judge FANCHER by the sheriff of Kings county, who, by his return, claimed to hold him in custody by virtue of the commitment of the Kings County Court of Oyer and Terminer, before mentioned, and the order of the New York Oyer and Terminer which had remanded him to the charge of such sheriff under the said commitment for his contempt in refusing to answer the question propounded by the grand jury. After a somewhat protracted hearing before the learned judge, in which all parties were ably represented by counsel, Mr. Shanks was discharged, for the reason that the Oyer and Terminer of Kings county had no power to commit him to prison until he should answer the question propounded by the grand jury and approved by the court, but that such imprisonment could not exceed the period of thirty days, and the term thereof, within such limit, should have been specified in the commitment. From the order and decision of Judge FANCHER, discharging Mr. Shanks from the custody of the sheriff of the county of Kings, a writ of certiorari, removing the

proceedings into this court, is a virtual appeal; and by it, an important practical question in the administration of justice is presented, affecting not only investigations for alleged libels, but any and every crime whatsoever. Before referring to the statutes of our State, let us look at it as a question of common law.

The Court of Oyer and Terminer of the county of Kings, had full and complete jurisdiction over all crimes and misdemeanors committed within its territorial jurisdiction. The grand jury was a necessary part of the machinery of the court, to inquire into all crimes committed within the body of the county, and to present all offenders for trial. In the prosecution of their inquiries, in regard to which they had been specially charged, they were entitled to the attendance of witnesses before them, and to the evidence of such witnesses when duly sworn. This is not only plain as an original question, but has been expressly held. * If a witness declines to answer a question, adjudged by the court to be legal and proper, the court has full power, without any statute, to compel an answer. It was well said by FLETCHER, Justice, in *Heard* v. *Pierce*, † just referred to, " The general rule is well established, that when a general power is given or duty enjoined, every particular power, necessary for the exercise of the one, or the performance of the other, is given by implication." Without the right to commit the witness who refuses to answer, how could " the power given," and " duty enjoined," of inquiring into all offenses against the law, be discharged? Courts of justice, if powerless to enforce lawful orders, would be only a show, and the attempt to bring offenders to justice, only a farce. But we need not reason to prove that this power of commitment is inherent in the court. It was so expressly held in *People* v. *Hackley*, before cited. In the course of his opinion, ‡ Judge DENIO, speaking of the refusal of a witness to answer a proper question propounded by a grand jury, and the right of the court to commit the witness for such refusal, said : " If the case is not reached by the statute, the power would be ample at the common law." Assuming, then, the power of the court to commit a witness for refusing to answer a proper question, the propriety of the duration

* Heard v. Pierce, 8 Cush., 338; People v. Hackley, 24 N. Y., 74.
† See page 345.                    ‡ Page 78.

of the imprisonment, as specified in the commitment of Mr. Shanks, is most obvious. It was neither unreasonable or improper, but was exactly adapted to the case. It terminated whenever Mr. Shanks obeyed a lawful and legal order, and continued just as long as he placed the power of the court and the law at defiance. Many a question in the investigation of crime, and necessary to be answered to bring a criminal to justice, would remain unanswered, if the witness knew that the lapse of thirty days would free him from the power of the court, and enable him to set at defiance the law, whilst the same person would freely answer, if he knew that his imprisonment would continue so long as he continued contumacious.

In the case before us, the learned judge who granted the discharge, does not intimate that the question which Mr. Shanks refused to answer, was not a legal and proper one to be propounded. As the law now is, and has for ages existed, no court could possibly hold that a witness could legally refuse to give the name of the author of an alleged libel, for the reason that the rules of a public journal forbade it. That some other party assumes the responsibility of a crime, and is willing to suffer its consequences, can never prevent an inquiry as to each and every person concerned therein, and the holding of all such equally responsible with the one avowing it. The admission of such a principle, if carried to its logical conclusion, would shield him who hires an assassin to strike a fatal blow, so long as the slayer avowed himself to be solely responsible for the act. This extreme case is put for the purpose of showing the impolicy of the reason, and its worthlessness in a court of justice. He who writes a libellous article for publication in a newspaper, is certainly guilty of a crime, and that guilt cannot be taken away by the readiness of another to meet its consequences. There is no exchange or substitution of punishment in the administration of justice. If, for reasons of public policy, it shall be deemed wise to hold only the editor or publisher of a paper liable for its contents, then the legislature alone can so declare by express enactment, for the contrary doctrine has become too firmly and fixedly imbedded in the common law by the lapse of ages, to be ever altered or disturbed by the courts.

Independent, then, of any statute authorizing the Court of Oyer

and Terminer to commit a witness for refusing to answer a proper question until answered, that court has ample power at common law to order such a commitment.    Such a proceeding is not one to *punish* a party as for a contempt, but the exercise of a power necessarily conferred, to elicit truth, and to administer justice.    It was not necessary to bring Mr. Shanks before the court and formally adjudge him to be guilty of a contempt; but, upon his refusal to answer the question which the court adjudged to be proper, it might, by simple rule, have ordered him to be confined until he should answer.    After this step had been taken, the court had ample power to punish for the contempt of its lawful authority. The two proceedings are separate and distinct, and the exercise of the one in nowise conflicts with the exercise of the other.    But the commitment of Mr. Shanks was precisely as the statute directs.

The Revised Statutes declare : " The proceedings prescribed by law in civil cases, in respect to the impanneling of juries, the keeping them together, and the manner of rendering their verdict, shall be had upon trials of indictments ; and the provisions of law in civil cases, relative to compelling the attendance and testimony of witnesses, their examination, the administration of oaths and affirmations, and proceedings as for contempts to enforce the remedies and protect the rights of parties, shall extend to trials and other proceedings on indictments, so far as they may be in their nature applicable thereto, subject to the provisions contained in any statute." *    It will be observed that "*proceedings as for contempts to enforce the remedies and protect the rights of parties*," are, by the section of the statute just quoted, made applicable " to trials and *other proceedings* on indictments."    In *People* v. *Hackley*, † before quoted, it was decided that the words, " other proceedings," make the section applicable to the case of a witness who refuses to answer proper questions, propounded by a grand jury.    Judge DENIO, in delivering the opinion of the court, ‡ says: " The criticism of the appellant's counsel is, that the examination of a witness before a grand jury is not a proceeding upon an indictment, and so not within the statute.    In one sense it is not.    But by the theory of proceedings in criminal cases, the indictment is supposed to be pre-

---

* Vol. 2, Edmond's ed., p. 759, § 14; 3d vol., 5th ed., pp. 1027, 1028, § 16.
† 24 N. Y., 74.                                    ‡ Page 79.

pared and taken before the grand jury by the counsel prosecuting for the State; and the evidence is then given in respect to the offense charged in it. If the party accused appears to be guilty, the indictment is certified to be a true bill; otherwise, it is thrown out. In that view of the practice, all which takes place before the grand jury, as well as the subsequent steps, may be said to be proceedings upon the indictment."

It will further be noticed, that the provisions of our Revised Statutes, relating to "proceedings as for contempts to enforce the remedies and protect the rights of parties," are alone made applicable to trials and other proceedings upon indictments, and not those which are contained * in part 3, chapter 3, title 2 and article 1, of the Revised Statutes. The learned counsel for Mr. Shanks is certainly correct in saying that Judge POTTER, *In the Matter of Watson,* † has very "clearly pointed out" the distinction between the two classes of contempts, but, unfortunately, in his argument, he contends that the latter sections referred to, are those which control the dealings with an obstinate witness, and not the former, which, by the express words of the statute, quoted above, are made applicable to proceedings of that character. Now what are those proceedings?

That portion of our Revised Statutes which is entitled, "Of proceedings, as for contempts, to enforce civil remedies and to protect the rights of parties in civil actions," ‡ gives to every court of record "power to punish by fine and imprisonment" for various causes, and, among others, "All persons summoned as witnesses for refusing and neglecting to obey such summons or to attend or be sworn or answer as such witness." The mode of procedure is also pointed out, and then it is enacted: § "When the misconduct complained of, consists in the omission to perform some act or duty, which it is yet in the power of the defendant to perform, he shall be imprisoned only, until he shall have performed such act or duty, and paid such fine as shall be imposed, and the costs and expenses of the proceedings." If this provision does not reach the

* 3 R. S., 5th edition, p. 486; 2d vol., Edmonds' edition, p. 286.
† 5 Lansing, 466.
‡ 2d vol., Edmonds' edition, p. 552; 3 R. S., 5th edition, p. 849.
§ 2d vol., Edmonds' edition, p. 557, sec. 23; 3d vol., 5th edition, p. 853, sec. 23.

case before us, then, it seems to us, language fails to express thought. The Court of Appeals * have held, in conformity with the plain words of the statute, that the provisions of our Revised Statutes, entitled, " Of proceedings, as for contempts, to enforce civil remedies and to protect the rights of parties in civil actions," are applicable to the case of a witness who refuses to answer proper questions to a grand jury. These portions of the Revised Statutes give to every court of record the power to punish by fine and imprisonment, or either, "all persons summoned as witnesses, for refusing or neglecting to obey such summons, or to attend, or be sworn, or answer, as such witness."

And they further provide, that when " the misconduct complained of, consists in the omission to perform some act or duty, *which is yet in the power of the defendant to perform*, he shall be imprisoned only *until he shall have performed such act or duty*, and paid such fine as shall be imposed, and the costs and expenses of the proceedings." The language is plain and imperative. It was evidently the " duty" of Mr. Shanks to answer the question asked ; " the misconduct complained of," clearly consisted " in the omission to perform some act or duty," which it was yet in his power to perform ; and, all these events occurring, the commitment was required to be " until he shall have performed such act or duty." It was in the power of the court, also, to have imposed a fine, in addition to the imprisonment ; it could do either or both, but the argument which seeks to prove that this section is not applicable, because no fine or costs were imposed in addition to the imprisonment, is certainly unsound and fallacious. The error which the learned judge committed in discharging Mr. Shanks, arose from applying certain other provisions of our laws, in regard to contempts, to this case, and in overlooking the fact that our statute governs " trials and other proceedings upon indictments by these provisions which relate to proceedings as for contempts to enforce the remedies and protect the rights of parties." In these statutes, there is no limitation of thirty days upon the power of imprisonment, and there obviously ought not to be. With such a restriction, a court would be powerless to enforce its orders, and insure obedience to its mandates.

Having reached the conclusion that the commitment of Mr.

* 24 N. Y., 74.

Shanks until he should answer the question asked by the grand jury, was legal and proper, it is perhaps unnecessary to go any further. But there is another provision of our Revised Statutes, so exactly applicable to this case, that attention is directed to it. In their direction as to proceedings upon writs of *habeas corpus*, are contained the following, which prescribe the duty of the court or officer before whom a party is brought on such writ : " It shall be the duty of such court or officer, forthwith to remand such party, if it shall appear that he is detained in custody, either  *  *  * for any contempt specially and plainly charged in the commitment, by some court, officer or body having authority to commit for the contempt so charged." *

It is difficult to see how this plain provision could have been overlooked. In the commitment of Mr. Shanks, a contempt was specially and plainly charged, and certainly the Court of Oyer and Terminer had authority to commit for the contempt so charged. The provision is imperative and clear, and its binding force has been repeatedly recognized.† A reference to these cases will show how imperative was the duty which the statute enjoins. The judge before whom Mr. Shanks was brought by the writ, as the cases referred to expressly hold, had no power to inquire into the truth of the facts stated in the commitment, nor whether the question was a proper one, or whether the prisoner was privileged from answering it. " The legislature" (as Judge Bʀᴏɴsᴏɴ further says in 5 Hill, 168) " did not intend to provide for a retrial by *habeas corpus* in such a case. The review is by certiorari or writ of error." And this opinion of Judge Bʀᴏɴsᴏɴ is precisely in conformity with the statutes of our State, ‡ which declare :  " But no court or officer on the return of any *habeas corpus* or *certiorari*, issued, under this article shall have power to inquire into the legality or justice of any process, judgment, decree or execution specified in the preceding twenty-second section ; *nor into the jus-*

* 3 R. S., 5th edition, p. 887, sec. 55; 2 Edmond's edition, p. 588, sec. 40.

† People v. Mitchell, 29 Barbour, 622;  People v. Nevins, 1 Hill, 154; see pages 170, 171 ; People v. Cassels, 5 Hill, 164; see pages 167, 168 ; People v. Spalding, 10 Paige, 284; see pages 286, 287 ; 7 Hill, 301; see conclusion of opinion of Nᴇʟ-sᴏɴ, Ch. J., on page 304.

‡ 2 Edmonds, page 589, section 42; vol. 3 of 5th edition R. S., page 888, section 57.

*tice or propriety of any commitment for a contempt made by any court, officer or body,* according to law, and charged in such commitment as hereinbefore provided."

These provisions of the statute seem to us to be very plain. In the first place, the officer allowing the writ is commanded " forthwith to remand such party, if it shall appear that he is detained in custody \* \* \* for any contempt specially and plainly charged in the commitment, by some court, officer or body having authority to commit for the contempt so charged ; " and in the next, such officer is declared to be *without power* " to inquire \* \* \* into the *justice* or *propriety* of any commitment for a contempt, made by any court, officer or body, according to law, and charged in such commitment." That commitment, which, in the expressed duration of its term, is in excess of the power conferred, is neither *just* nor *proper ;* and a review of that question necessarily involves its "*justice*" and "*propriety.*" We do not see how this conclusion can be avoided, for, if it be held that any officer who may issue a *habeas corpus,* may discharge a person who is committed for a contempt, because such party is committed for a longer period than the law authorizes, then such officer must necessarily pass judgment upon the " justice " and " propriety " of such commitment ; and precisely this the statute has forbidden. Having conferred upon courts and officers the general power to commit for a contempt, the legislature evidently intended that, when in such a legal and proper case (and this is what the term " *according to law,*" in the section quoted, means) that power had been exercised, it should not be the subject of a review, summarily, by either *habeas corpus* or certiorari, issued under the statute entitled, " Of the writs of *habeas corpus* and certiorari when issued to inquire into the cause of detention." No other construction will satisfy the plain words of our written law ; and, certainly, judicial comity and a proper respect for the opinion of a court organized according to law — one member of which was the peer and judicial equal of the judge who discharged Mr. Shanks — should have prevented the summary disregard of its commitment, and left the party to his remedy by reviewing it in the manner in which Judge Bronson has pointed out. We say this with all respect to the learned judge who granted

the discharge.   Doubtless, owing to the pressure of many engage-
ments, he was prevented from fully considering all the important
questions which this case involves; and, had it been presented for
review at a General Term, when the argument was more full, and
more time given for deliberation, his conclusion might have been
different.

Enough has been said to justify a reversal of the order dis-
charging Mr. Shanks from custody; but, for the purpose of gov-
erning future proceedings in cases of this character, we allude to
another plain provision of our statutes, which, in this matter, was
disregarded.

Mr. Shanks was in the custody of the sheriff of the county of
Kings for a crime.   In *Spalding* v. *The People*, * the Court
of Errors held, that a contempt of court was "a criminal offense
under the Revised Statutes, and was so before at the common law;
subjecting the offender to indictment, and on conviction to fine
and imprisonment."   When the writ of *habeas corpus* was issued
to inquire into the cause of his detention, the Court of Oyer and
Terminer of the county of Kings was in session, and that being
the case, Judge FANCHER had no power to make the writ return-
able before himself, and no power to discharge the arrest.   The
order of discharge was absolutely *coram non judice*, and void.
The statute reads : "After the Court of Oyer and Terminer shall
commence its sittings in any county, no prisoner detained in the
common jail of any such county, upon *any criminal* charge, shall be
removed therefrom by any writ of *habeas corpus*, unless such writ
shall have been issued by such Court of Oyer and Terminer, or shall
be made returnable before it." †   The writ, in the form it was
issued, was powerless to remove the prisoner.   It was expressly
forbidden by statute, and the sheriff would have been fully
justified in refusing to produce the body of Mr. Shanks, and in
making a return that he declined to obey it, for the reason that
the written law forbade it.   That portion of our statute which
contains the section we have quoted, is entitled, " Of the inspec-
tion of county prisons and the discharge and delivery of prisoners
confined therein," and it is obvious from its title as well as its pro-

* 7 Hill, 301.    † 2 Edmonds, p. 784, sec. 27; vol. 3 of 5th ed., p. 1066, sec. 27.

visions, that the sheriff should not have brought Mr. Shanks before the judge who issued the writ. The effect of his obedience was to remove the prisoner from the common jail of the county, contrary to the express command of the statute.

However doubtful our view may be of the duty of the sheriff when this writ was served upon him, it cannot, we submit, be even plausibly argued that Judge Fancher had power to order the discharge. The writ was returnable before himself, when the law required it to be returnable before the Court of Oyer and Terminer of Kings county. The learned judge ordered him to be removed from the common jail, when the statute plainly declared he could not be so removed. No sophism can close our eyes to the plain words we have quoted, and no argument add to their simple forbidding and direction. The result of our examination is, that the discharge of Mr. Shanks by Mr. Justice Fancher was illegal and unauthorized, and that he must be remanded to the custody of the sheriff of Kings county, to be held by such sheriff under the commitment of the Court of Oyer and Terminer of that county, and subject to the control of that tribunal.

Daniels, J : I concur in holding that the witness was legally committed until he answered the questions, and that the discharge on *habeas corpus* was improper.

Davis, P. J.: I concur on the following grounds:

1st. The witness was lawfully committed for refusing to answer a proper question; and the commitment until he should answer was regular and lawful, in form and substance, both under the statute and at common law.

2d. The writ should have been returnable before the Oyer and Terminer of Kings county. And when it appeared to the judge that that court was in session, the writ should have been dismissed as improvidently granted, or the hearing thereon should have been sent before that Oyer and Terminer. This was required both by the statute and by the comity due to a tribunal of concurrent jurisdiction in such proceedings.